[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Rocco v. Cuyahoga Cty. Bd. of Elections,* Slip Opinion No. 2017-Ohio-4466.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-4466

THE STATE EX REL. ROCCO *v.* CUYAHOGA COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Rocco v. Cuyahoga Cty. Bd. of Elections,* Slip Opinion No. 2017-Ohio-4466.]

*Mandamus—Elections—Westlake City Charter—Qualifications for law director— Writ granted.*

(No. 2017-0315—Submitted April 4, 2017—Decided June 27, 2017.)

IN MANDAMUS.

_____

**O'DONNELL, J.**

{¶ 1} Andrea Rocco filed a complaint seeking a writ of mandamus to compel the Cuyahoga County Board of Elections to issue a certificate of nomination and to certify her name for placement upon the November 7, 2017 ballot as a candidate for the city of Westlake's director of law.

{¶ 2} We conclude that Article IV, Section 4 of the Westlake City Charter, which states that the city's director of law shall have been "engaged in the active practice of law in Ohio for a period of six (6) years next preceding his election," requires the director of law to have been engaged in the active practice of law for any period of six years preceding election. Because Rocco satisfied this requirement, we hold that the board abused its discretion by sustaining the protests to her candidacy, and we grant a writ of mandamus to compel the board of elections to issue a certificate of nomination and to certify Rocco on the November 7 ballot as a candidate for the position of director of law for the city of Westlake.

**Background**

{¶ 3} In January 2017, Rocco filed nominating petitions and statements of candidacy to run for the position of Westlake Director of Law.

{¶ 4} Four protests were subsequently filed against her candidacy, contending that she did not meet requirements to hold the position of director of law. The protests alleged that the charter required the director of law to have been actively practicing law during the six years immediately preceding election to the office. Prior to seeking office, Rocco served for two years as the Cuyahoga County Clerk of Courts, between March 2013 and January 2015. The protests contended that Rocco's service as clerk of courts did not qualify as the active practice of law.

{¶ 5} Rocco argued that the charter requires a candidate merely to have actively practiced law for *any* six-year period prior to assuming office, and she noted that she has more than six years of continuous legal experience, including six years as an Ohio assistant attorney general, 20 months as a Lake County assistant prosecutor, and two years in private practice.

{¶ 6} The Cuyahoga County Board of Elections conducted a hearing on the protests on February 24, 2017, and, at the conclusion of the hearing, it voted two to one (with one member absent) to sustain the protests.

**{¶ 7}** On March 3, 2017, Rocco filed this original action for a writ of mandamus. She simultaneously filed a motion to expedite, which we granted. The parties have filed briefs, and Rocco has submitted evidence.

### Provisions of the Westlake Charter

**{¶ 8}** The requirements to hold the office of director of law for the city of Westlake are provided in Article IV, Section 4 of the city charter, which states:

> The Director of Law shall be a qualified elector at the time of his election, shall have been a resident of the City for at least eighteen (18) months *immediately preceding* his election, an attorney at law duly admitted to the practice of law before the courts of the State of Ohio, and been engaged in the active practice of law in Ohio for *a period of six (6) years next preceding his election.*

(Emphasis added.)

**{¶ 9}** Contrary to the conclusion of the Cuyahoga County Board of Elections, this case does not involve interpretation of the phrase "active practice of law" but rather turns on when relative to the election the candidate must have engaged in the active practice of law.

### A Period of Six Years

**{¶ 10}** The charter of the city of Westlake uses the phrase "for a period of six years" in describing the length of time that a candidate shall have engaged in the practice of law.

**{¶ 11}** In *State ex rel. Mullholland v. Schweikert*, 99 Ohio St.3d 291, 2003-Ohio-3650, 791 N.E.2d 448, ¶ 11, quoting *In re Collier*, 85 Ohio App.3d 232, 237, 619 N.E.2d 503 (4th Dist.1993), this court stated, " 'The word "a" is an indefinite article that denotes a thing not previously noted or recognized, in contrast with "the," which denotes a thing previously noted or recognized.' " *See also Allstate*

*Ins. Co. v. Freeman*, 432 Mich. 656, 698, 443 N.W.2d 734 (1989), quoting *Allstate Ins. Co. v. Foster*, 693 F.Supp. 886, 889 (D.Nev.1988) (" ' "[a]" or "an" is an indefinite article often used in the sense of "any" and applied to more than one individual object; whereas "the" is an article which particularizes the subject spoken of' ").

{¶ 12} In *Mixon v. One Newco, Inc.*, 863 F.2d 846 (11th Cir.1989), where a Georgia statute provided that a landowner could recover the mineral rights underlying his property by adverse possession if the mineral owner had "neither worked nor attempted to work the mineral rights nor paid any taxes due on them for a period of seven years since the date of the conveyance," Ga.Code Ann. § 44-5-168(a), the United States Court of Appeals concluded that the Georgia legislature's "use of the indefinite article in its reference to '*a* period of seven years' as opposed to '*the* period' indicates that any seven-year period of nonuse or nonpayment of taxes following the date of conveyance would suffice" (emphasis added), *Mixon* at 850.

{¶ 13} Similarly here, the use of the phrase "*a* period of six (6) years" in the Westlake City Charter as opposed to "*the* period of six (6) years" suggests that the director of law shall have been engaged in the active practice of law for any six year period preceding election. (Emphasis added.)

## Next and Immediately Preceding

{¶ 14} The Westlake charter uses the phrase "immediately preceding" in reference to the residency requirement, but in the same sentence, it uses the phrase "next preceding" in reference to the practice of law requirement to hold the office of director of law. By using different words to describe these separate requirements, the drafters intended different meanings.

{¶ 15} In *Metro Secs. Co. v. Warren State Bank*, 117 Ohio St. 69, 76, 158 N.E. 81 (1927), this court determined that where certain language is used in one instance and wholly different language is used in another instance, it is "presumed

4

that different results were intended." *See also State v. Pope*, 2017-Ohio-1308, ___ N.E.3d ___, ¶ 22 (2d Dist.) (rejecting claim that the terms "transport" and "operate" are interchangeable); *Farmer v. Berry*, 2012-Ohio-4940, 981 N.E.2d 929, ¶ 15 (8th Dist.) (distinguishing "a person acting on the member's behalf" from "member"); *State ex rel. Cordray v. Court of Claims*, 190 Ohio App.3d 161, 2010-Ohio-4437, 941 N.E.2d 93, ¶ 27 (10th Dist.) (distinguishing "claimant" from "the attorney representing a claimant"); *Huntington Natl. Bank v. 199 S. Fifth St. Co., L.L.C.*, 10th Dist. Franklin No. 10AP-1082, 2011-Ohio-3707, ¶ 11, 18 (distinguishing the phrase "must produce the warrant of attorney * * * to the court" from the phrase "[t]he original or a copy of the warrant shall be filed with the clerk").

**{¶ 16}** Thus, the use of the phrase "shall have been a resident of the city for at least eighteen (18) months immediately preceding his election" in close proximity to the phrase "been engaged in the active practice of law in Ohio for a period of six (6) years next preceding his election" implies that the drafters of the charter intended to require of a candidate for director of law something other than having been engaged in the active practice of law for a period of six years "immediately preceding" the election. Otherwise, they would have used "immediately preceding" to refer to that requirement. But they did not do so.

**{¶ 17}** We conclude that because the Westlake City Charter uses the indefinite article "a," meaning any period, instead of the definite article "the" with respect to the six year period of active practice of law, it connotes that the director of law shall have been engaged in the active practice of law for any period of six years next preceding election, and because the city charter uses the words "next preceding" with respect to the practice of law requirement instead of the term "immediately preceding" as it does with respect to the residency requirement, it is presumed that different meanings were intended. And therefore, Article IV, Section 4 of the city charter requires that the director of law shall have been engaged in the active practice of law in Ohio for *any* period of six years preceding election.

**{¶ 18}** This interpretation is consistent with this court's "duty to liberally construe words limiting the right of a person to hold office in favor of those seeking to hold office so that the public may have the benefit of choice from all qualified persons." *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 34.

### Practice of Law by Rocco

**{¶ 19}** As to whether Rocco engaged in the active practice of law for any six year period preceding the November 2017 election, Rule I, Section 9(B) of this court's Rules for the Government of the Bar of Ohio defines the "practice of law" for purposes of admission to the bar without examination to include

(1) Private practice as a sole practitioner or for a law firm, legal services office, legal clinic, or similar entity * * *;

(2) Practice as an attorney for a corporation, partnership, trust, individual, or other entity, provided such practice * * * involved the primary duties of furnishing legal counsel, drafting legal documents and pleadings, interpreting and giving advice regarding the law, or preparing, trying, or presenting cases before courts, tribunals, executive departments, administrative bureaus, or agencies;

(3) Practice as an attorney for the federal government, a branch of the United States Government, or a state or local government with the same primary duties as described in division (B)(2) of this section.

**{¶ 20}** The evidence in this case establishes that Rocco did engage in the active practice of law for a period of six years preceding the November 2017 election. Following her admission to the bar in November 1993, she worked as an

attorney at the Cleveland law firm of McGinty, Gibbons, Hilow & Spellacy until November 1995. She then served as an Assistant Attorney General in the Cleveland office of the Ohio Attorney General from October 1995 to February 2002. From April 2002 to April 2013, Rocco worked as a Prosecutor and Assistant Director of the Westlake Law Department. She then served as the Cuyahoga County Clerk of Courts from March 2013 to January 2015. And since September 2015, she has served as counsel to the Ohio Patrolmen's Benevolent Association. Thus, she has practiced law for a period of six years next preceding the November 7, 2017 election.

{¶ 21} To obtain a writ of mandamus, a relator must demonstrate a clear legal right to the relief requested, a clear legal duty on the part of the board to perform an act, and the lack of an adequate remedy at law. *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 8. "[T]o establish the requisite legal right and legal duty, [a relator] 'must prove that the board of elections engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or other pertinent law.' " *Id.* at ¶ 9, quoting *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 8.

{¶ 22} Accordingly, Rocco has demonstrated that the board abused its discretion by denying her a certificate of nomination. Therefore, we issue the requested writ of mandamus to compel the board of elections to issue a certificate of nomination and place Andrea Rocco on the November 7 ballot as a candidate for law director of the city of Westlake.

Writ granted.

FRENCH, J., concurs.

O'NEILL, J., concurs in judgment only, with an opinion.

FISCHER, J., concurs in judgment only.

O'CONNOR, C.J., dissents, with an opinion.

DeWINE, J., dissents, with an opinion joined by KENNEDY, J.

_____

**O'NEILL, J., concurring in judgment only.**

{¶ 23} I concur in the judgment of the lead opinion; however, I would grant the writ based on relator's third proposition of law. The board abused its discretion when it found that relator, Andrea F. Rocco, was not engaged in the active practice of law during her tenure as the Cuyahoga County Clerk of Courts. This court has stated that the practice of law "includes representation before a court, as well as the preparation of pleadings and other legal documents, the management of legal actions for clients, all advice related to law, and all actions taken on behalf of clients connected with the law." *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, ¶ 22. At the hearing challenging her candidacy, Rocco asserted that while she was the Cuyahoga County Clerk of Courts, she *regularly provided legal advice* to her governmental office, drafted legal memoranda, and consulted state and local court rules to address various problems in the office.

{¶ 24} That is the practice of law. Nowhere in the record before us is there a scintilla of evidence to rebut that assertion. Based upon the record before us, Rocco's 21-month tenure as the Cuyahoga County Clerk of Courts easily falls within this court's definition of the practice of law, and the board has abused its discretion by denying her a place on the November 2017 ballot. Accordingly, I concur with the judgment of the lead opinion that Rocco is entitled to a writ of mandamus, albeit on different grounds.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 25} The lead opinion contorts the rules of statutory construction to achieve its desired result. But a straightforward application of the rules warrants the opposite outcome. I dissent.

**{¶ 26}** " 'The interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' We must read undefined words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, 884 N.E.2d 39, ¶ 14 (2008), quoting *Morning View Care Ctr.-Fulton v. Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 36; *see also Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8; *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 22; *Davis v. Davis*, 115 Ohio St.3d 180, 2007-Ohio-5049, 873 N.E.2d 1305, ¶ 14-15.[1] But the lead opinion ignores the definitions and everyday usage of the words "immediately" and "next." Instead, the lead opinion hypothesizes that the Westlake City Council used two different words to indicate a different intent. To get there, the lead opinion borrows an analysis that has been used in a wholly separate context: construing two discrete statutes or two terms with distinct meanings. *Metro. Secs. Co. v. Warren State Bank*, 117 Ohio St. 69, 76, 158 N.E. 81 (1927) (determining whether an earlier or later statute applies when both, on their faces, appear to govern a single activity but impose inconsistent requirements); *State v. Pope*, 2d Dist. Montgomery No. 27231, 2017-Ohio-1308, ___ N.E.3d ___, ¶ 19, 22-23 (comparing the offenses of operating a vehicle while under the influence of alcohol and improperly handling a firearm in a motor vehicle while intoxicated and distinguishing the terms "transport" and "operate"); *Farmer v. Berry*, 2012-Ohio-4940, 981 N.E.2d 929, ¶ 15 (8th Dist.) (comparing R.C. 145.32 to R.C. 145.35(C) and distinguishing "a person acting on the member's behalf" from "member"); *State ex rel. Cordray v. Court of Claims*, 190 Ohio App.3d 161,

---

[1] Although many of the cited cases in this opinion interpret the Revised Code, we have previously applied the Revised Code's rules of statutory construction to local ordinances. *See, e.g.*, *Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14-15.

2010-Ohio-4437, 941 N.E.2d 93, ¶ 27 (10th Dist.) (distinguishing "claimant" from "the attorney representing a claimant" as used in two different subsections of a statute); *Huntington Natl. Bank v. 199 S. Fifth St. Co., L.L.C.*, 10th Dist. Franklin No. 10AP-1082, 2011-Ohio-3707, ¶ 11, 18 (differentiating a requirement to produce "the warrant" in one sentence of a statute from a requirement to file "[t]he original or a copy of the warrant" in the last sentence of the statute and finding that "[t]o conclude otherwise would render some of the words the legislature used in the last sentence surplusage").

**{¶ 27}** Relying on these inapposite cases, the lead opinion fails even to consider the common usage or dictionary definitions of the terms "next" and "immediately." They are synonymous. *See, e.g.*, *Webster's Third New International Dictionary* 1524 (2002). The lead opinion's construction fails to give any meaning to the word "next," thereby abrogating our instruction that "all words should have effect and no part should be disregarded," *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. *See also Beau Brummell Ties, Inc. v. Lindley*, 56 Ohio St.2d 310, 311-312, 383 N.E.2d 907 (1978), quoting *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969) (" 'it is the duty of this court to give effect to the words used [in a statute], not to delete words used *or to insert words not used*' " [brackets and emphasis added in *Beau Brummell Ties*]); *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus ("significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act").

**{¶ 28}** Next means "[n]earest; closest; *immediately* following." (Emphasis added.) *Black's Law Dictionary* 1043 (6th Ed.1990). Immediately means "[w]ithout interval of time, without delay, straightway, or without any delay or lapse of time." *Id.* at 750. In fact, one dictionary defines "next" as "immediately preceding." *Webster's* at 1524. And one thesaurus suggests "nearest" as a

synonym for both "immediately" and "next." *Roget's International Thesaurus* 1015, 1093 (4th Ed.1977). The lead opinion's construction renders the word "next" superfluous and fails to follow the mandate that we must give effect to the common usage of each and every word in a statute.

{¶ 29} The lead opinion's suggestion that the Westlake City Council intended different meanings because it used "a" instead of "the" is similarly flawed. The use of "a" with "next preceding" is not a unique or even unusual construction, particularly when paired with "a period" of years. This construction is used at least six times in the Revised Code, and a plain reading of each of those statutes leads to the conclusion that "next preceding" means "immediately preceding."

{¶ 30} For instance, R.C. 2113.41 describes the duties of an estate executor related to a public auction of personal property. Under the statute, the executor may give notice of the sale by placing an advertisement "appearing at least three times in a newspaper of general circulation in the county during a period of fifteen days next preceding the sale." R.C. 2113.41(A)(1). Alternatively, the executor may post an advertisement in five public places in the township or municipality where the sale will take place "not less than fifteen days next preceding the sale." R.C. 2113.41(A)(2). The executor is required to sell the personal property "at a fixed price or for the best price obtainable." R.C. 2113.40. Read together, a reasonable conclusion is that the advertising requirement promotes attendance at the auction to achieve the best price through competitive bidding. The advertising requirement also prevents inside dealing by preventing the executor from concealing the sale to create artificially low prices for friends and family at the expense of the estate. But the lead opinion's interpretation of the "a period * * * next preceding" construction would permit the executor to drive down attendance, and thereby prices, by advertising during a 15-day period months or even years preceding the auction. A plain reading of the statute would never warrant that outcome.

**{¶ 31}** Other examples also illustrate the absurdity of the lead opinion's analysis.

**{¶ 32}** R.C. 351.04 describes the requirements for a convention facility's board of directors. It requires that "[e]ach director shall have been a qualified elector of, or shall have had his business or place of employment in the county creating the authority for a period of at least three years next preceding his appointment." The board must include a representative of (1) the county's townships, (2) a major business trade organization in the county, (3) the county's convention and visitor's bureau, (4) the mayor of the county's largest municipality, and (5) the mayors of the remaining municipalities. R.C. 351.04(A)-(C). With this emphasis on local resident and business appointees, it is absurd to conclude that the General Assembly intended to permit the appointment of a board member who no longer has contacts in the county but lived there for three years during college four decades ago. Under the lead opinion's strained interpretation, such a result is entirely permissible. And the lead opinion's interpretation may cause a comparably bizarre result for port authority boards of directors, Ohio Turnpike commissioners, and members of the Ohio water development authority. *See* R.C. 4582.03(A) and 4582.27 ("A majority of the directors [of a port authority] shall have been qualified electors of, or shall have had their businesses or places of employment in, one or more political subdivisions within the area of the jurisdiction of the port authority, for a period of at least three years next preceding their appointment"); R.C. 5537.02(B)(2) (turnpike commission "members appointed by the governor shall be residents of the state, shall have been qualified electors therein for a period of at least five years next preceding their appointment"); R.C. 6121.02 (appointed members of the water development authority "shall be residents of the state, and shall have been qualified electors therein for a period of at least five years next preceding their appointment").

**{¶ 33}** The lead opinion's analysis effects an equally ridiculous outcome for the citizens of Westlake. A person could graduate from law school and spend the next six years practicing law in Ohio. After that, the lawyer could leave the state or even the country and spend the next four decades toiling in another profession before retiring to Westlake. After spending one and a half years in the city, the person, who could have spent the last 40 years working in fields as diverse as animal husbandry, surgery, or ballet, could run for law director. The law director's duties include:

> [S]erving the Mayor, the various administrative departments of the City, the Planning Commission, the Board of Zoning Appeals, the Board of Building Appeals, the Civil Service Commission, officers of the City and Council as attorney and legal counsel * * * [and] represent[ing] the City in all proceedings in court or before any administrative body.

Westlake Codified Ordinances Chapter 133.01(a). Under the lead opinion's analysis, these significant responsibilities could fall to a person who has not practiced law in decades. It is unfathomable that the Westlake City Council intended this result when it decided to use "a" and "the," "next" and "immediately."

**{¶ 34}** The lead opinion's strained analysis ignores our precedent, the canons of statutory construction, and the words chosen by the duly elected council members of Westlake. That the lead opinion goes to such lengths in this case is curious, particularly given that the proper interpretation of the ordinance would mean only that relator, Andrea F. Rocco, cannot appear as a candidate for law director in the November 2017 election. If she continues to practice law—as she has since leaving the clerk of courts' office in January 2015—she could appear as a candidate for law director in the November 2021 election.

**{¶ 35}** For the foregoing reasons, I dissent.  I would hold that the charter requires a candidate for Westlake director of law to be engaged in the active practice of law during the six-year period immediately preceding his or her election, and, consistent with our precedent in election cases, I would defer to the determination of the Cuyahoga County Board of Elections that Rocco did not meet that requirement and deny the writ.

_____

**DEWINE, J., dissenting.**

**{¶ 36}** The citizens of Westlake chose to enact a charter provision requiring that the city's law director have been engaged in the "active practice of law in Ohio for a period of six (6) years next preceding his election."  Today, the lead opinion rewrites the charter to effectively strike the words "next preceding his election" and to simply require that the law director have practiced law for any six-year period.  Because I would honor the choice made by the Westlake citizens—and because I disagree with the linguistic legerdemain employed by the lead opinion to reach its desired result—I dissent.

***The Ordinary and Established Meaning of "Next Preceding"***

**{¶ 37}** The Westlake City Charter requires that

> [t]he Director of Law shall be a qualified elector at the time of his election, shall have been a resident of the City for at least eighteen (18) months *immediately preceding* his election, an attorney at law duly admitted to the practice of law before the courts of the State of Ohio, and been engaged in the active practice of law in Ohio for a period of six (6) years *next preceding* his election.

(Emphasis added.)  Westlake City Charter, Article IV, Section 4.

{¶ 38} There can be no plausible question as to what is meant by the phrase "next preceding." "Next" literally means "immediately preceding or following in order." *Webster's Third New International Dictionary* 1524 (2002). "Preceding" means "going before." *Id.* at 1783. Under any reasonable interpretation, "a period of six years next preceding the election" means the six-year period that comes *immediately* prior to the election.

{¶ 39} And this is the manner in which the phrase has been consistently used in Ohio law. For example, R.C. 135.33(A) provides that a "board of county commissioners shall meet every four years in the month next preceding the date of the expiration of its current period of designation." R.C. 1561.12 similarly requires that an applicant for a position such as deputy mine inspector must present evidence that the applicant has been a resident and citizen of the state "for two years next preceding the date of application." Plainly, in these statutes, the phrase means "immediately preceding."

{¶ 40} Other examples abound. The third paragraph of R.C. 6105.08 requires certification of an annual watershed-district budget to the county commissioners. The fourth paragraph then sets forth the duties the commissioners must perform "[u]pon the receipt of the certification under the next preceding paragraph of this section." The fourth paragraph makes sense only if "the next preceding paragraph" is the third paragraph, i.e., the immediately preceding paragraph. Another example can be found in R.C. 3929.30, which requires that on January 1 or within 60 days after that date, insurance-company officers must file with the superintendent of insurance "a statement of the condition of such company on the next preceding thirty-first day of December." The "next preceding thirty-first day of December" obviously refers to the December 31 immediately preceding the start of that specific 60-day annual reporting window. Any other conclusion would render the requirement meaningless.

{¶ 41} Ohio courts have likewise used the phrase "next preceding" as synonymous with "immediately preceding." In *Cincinnati v. Kirk*, 20 Ohio App. 452, 152 N.E. 207 (1st Dist.1925), the First District Court of Appeals observed that "[t]he damages claimed were for a period of four years next preceding the filing of the petition, which is the period limited by the statute." *Id*. at 453. If the phrase could be used to describe the operation of a statute of limitations, it necessarily must refer to the period of time *immediately* preceding the event at issue. *See also Mansfield v. Hunt*, 10 Ohio C.D. 567, 569, 19 Ohio C.C. 488, 1900 WL 1068 (5th Dist.1900) (similarly concluding, when the plaintiff claimed that the defendant had been polluting a stream for the past 12 years, that the statute of limitations would not bar damages for injuries occurring "within a period of four years next preceding the bringing of the action").

{¶ 42} The board of elections not surprisingly used the ordinary and established meaning of "next preceding" and concluded that in the Westlake City Charter, that phrase indicated a six-year period immediately preceding the election. Applying a definition of "active practice of law" that had been prepared by a law firm after review of decisions of this court, the board determined that relator, Andrea F. Rocco, had not met the charter's practice-of-law requirement. The lead opinion—which has the support of a total of two justices—determines that the board's construction of the charter amounts to an abuse of discretion. In the lead opinion's view, "a period of six (6) years next preceding" the election means *any* six-year period before the election.

### *The Lead Opinion's Rewrite of the Westlake City Charter*

{¶ 43} The lead opinion never pretends that the common and ordinary meaning of "next preceding" is not "immediately preceding." Rather, it relies on contextual clues that it finds in the charter to reach its conclusion that the ordinary meaning of the term should not apply. First, it focuses on the charter's reference to "*a* period of six years" rather than "*the* period of six years." (Emphasis added.)

Then, it looks to the use of "immediately preceding" in the context of the provision's residency requirement in contrast to the use of "next preceding" in the practice-of-law requirement. Using its contextual clues, the lead opinion shortens the phrase "a period of six (6) years next preceding his election" to simply "a period of six (6) years." I consider each facet of the lead opinion's analysis in turn.

{¶ 44} Because "a" is an indefinite article that is generally construed to mean "any," the lead opinion reasons that the phrase "a period of six years next preceding" the election must mean *any* six-year period before the election. If the charter's drafters had intended for the requirement to be the specific six-year period prior to the election, the lead opinion says, the drafters would have used "*the* period of six years next preceding" the election. Fair enough. The problem, though, is we must construe the article in the context of the entire sentence. *State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, 884 N.E.2d 39, ¶ 14, citing *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 35. Indeed, courts routinely look to the language of the entire provision in determining whether an indefinite article, such as "a," actually has a singular definition. *See, e.g.*, *Holladay Duplex Mgmt. Co. v. Howells*, 2002 UT App 125, 47 P.3d 104, ¶ 5-8; *Farrington's Owners' Assn. v. Conway Lake Resorts, Inc.*, 2005 ME 93, 878 A.2d 504, ¶ 11-13; *People v. Booker*, Mich.App. No. 283490, 2009 WL 2382466, *5 (Aug. 4, 2009). Reading the provision as a whole—that is, considering not just the "a period" language but the entire phrase "a period of six (6) years *next preceding* [her] election"—there can be little doubt that the phrase means the six-year period immediately prior to the election.

{¶ 45} The second aspect of the lead opinion's analysis is even shakier. The lead opinion asserts that because the drafters used the phrase "immediately preceding" in the same provision of the charter, "next preceding" must mean something different than "immediately preceding." But, in none of the cases cited by the lead opinion in support of the canon of construction that presumes consistent

usage were synonymous words or phrases at issue. Synonymous phrases don't become antonymous phrases just because they appear in the same sentence.

**{¶ 46}** Indeed, the statutory canon relied upon by the lead opinion ("the presumption of consistent usage") has been called " 'narrow and mischievous' " by no less an authority than Justice Joseph Story. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012), quoting 1 Joseph Story, *Commentaries on the Constitution of the United States*, Section 454, at 323 (2d Ed.1858). It is said that "more than most other canons, this one assumes a perfection of drafting that, as an empirical matter, is often not achieved. Though one might wish it were otherwise, drafters * * * often * * * use different words to denote the same concept." *Id.*

**{¶ 47}** While the statutory canon upon which the lead opinion hangs its hat is "often disregarded," *id.* at 171, we should not ignore a much more fundamental principle of interpretation: that words in statutes should not be construed to be redundant, nor should any words be ignored. *E. Ohio Gas Co. v. Pub. Util. Comm.*, 39 Ohio St.3d 295, 299, 530 N.E.2d 875 (1988). Rather, "[s]tatutory language 'must be construed as a whole and given such interpretation as will give effect to every word and clause in it.' " *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 26, quoting *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 372-373, 116 N.E. 516 (1917).

**{¶ 48}** Here, the lead opinion effectively reads the words "next preceding his election" out of the charter. The requirement that the law director have "been engaged in the active practice of law in Ohio for a period of six (6) years *next preceding* his election" (emphasis added) is transformed into a requirement that the law director have "been engaged in the active practice of law in Ohio for a period of six (6) years." The charter is reimagined with four words stricken. In so doing,

the lead opinion tramples upon our duty to give meaning to every word in the charter.

{¶ 49} The lead opinion also ignores the charter's use of the word "period." The charter states that the law director must have been engaged in the practice law for a *period* of six years, not a *total* of six years. The use of the word "period" is conspicuous, connoting that the six years must be consecutive. A "period" is defined as "a chronological division." *Webster's at* 1680. That the charter requires the six years of practice be consecutive is significant. Under the lead opinion's reading, any random consecutive six-year period, no matter how remote, would suffice. But what makes more sense—that the charter would require six consecutive years of legal practice at any time in the candidate's life or that it would require six consecutive years of legal practice in the period adjacent to the time that the candidate would begin performing legal services for Westlake? Plainly, the latter.

### *The Board's Reading of the Six-Year Requirement is Reasonable*

{¶ 50} There is little need to write more. The board's interpretation of the charter squares with the plain and legally established meaning of the phrase "next preceding." Application of rules of statutory construction reinforce this obvious point and demonstrate how far afield the lead opinion has drifted.

{¶ 51} Nonetheless, it bears mentioning that this is not an instance in which the board's interpretation of the charter is nonsensical. Rather, it makes perfect sense that Westlake—in determining who is qualified to perform the day-to-day legal work required of the position—would require that the law director be a person who is currently engaged in the day-to-day practice of law. And it makes sense that the length of time the person elected law director must have engaged in the practice of law—6 years—be significant. Current, significant engagement in the practice of law seems a most reasonable requirement for the position of law director. The charter would disqualify a person who worked at a law firm for 6 years and then

decided to try something else for 20 years or a person who strung together 6 years of practice over 30 years, off and on. That it disqualifies Rocco may seem unfair to some, but her disqualification is due to her resume—not because the charter does not say what it means.

### *Conclusion*

{¶ 52} Under the plain, ordinary, and established meaning of the term "next preceding," Rocco was required to have been engaged in the active practice of law for six years immediately prior to the election. In concluding otherwise—and removing the phrase "next preceding his election" from the charter—the lead opinion violates established rules of statutory construction.

{¶ 53} In enacting the "six (6) years next preceding" requirement, the citizens of Westlake made a reasoned choice to require that the city's law director have recent experience in the practice of law. Today, Andrea Rocco is placed on the ballot pursuant not to the Westlake City Charter but by order of this court.

{¶ 54} Our duty is to apply the charter that was enacted by the citizens of Westlake, not to rewrite it to our liking. In my view, the board of elections did not abuse its discretion when it applied the plain language of the charter and determined that Rocco was not eligible to serve as law director. Because a majority of this court sees it differently, I respectfully dissent.

KENNEDY, J., concurs in the foregoing opinion.

_____

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for relator.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for respondents.

_____