**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Elmore v. Franklin Cty. Bd. of Elections,* Slip Opinion No. 2025-Ohio-2585.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2025-Ohio-2585**

**THE STATE EX REL. ELMORE ET AL. *v.* FRANKLIN COUNTY BOARD OF ELECTIONS ET AL.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Elmore v. Franklin Cty. Bd. of Elections,* Slip Opinion No. 2025-Ohio-2585.]**

*Prohibition—Elections—City-charter provision requiring that city-council candidates have resided in their respective wards "for at least two years next preceding their election" refers to the two years immediately preceding election at issue and applies to both ward and at-large candidates—County board of elections' denial of relator's protest against candidacy was unauthorized by law—Writ granted.*

(No. 2025-0369—Submitted June 24, 2025—Decided July 23, 2025.)

IN PROHIBITION.

———————————

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in judgment only.

**Per Curiam.**

{¶ 1} This is an election case concerning respondent Franklin County Board of Elections' certification of respondent Holly Stein's name for placement on the November 4, 2025 general-election ballot as a candidate for the Ward 4 seat on the Whitehall City Council. Relators, Lori Elmore and the City of Whitehall, contend that the board erred in certifying Stein's name because, they say, she does not meet the two-year residency requirement found in Section 3(a) of the Whitehall Charter. As relief, relators request a writ of prohibition to prevent the board from placing Stein's name on the ballot. We grant the writ.

## I. BACKGROUND

{¶ 2} Whitehall is a municipal corporation located within Franklin County and is governed by a charter. Section 3(a) of the charter provides that "Council members for wards shall have resided in their respective wards and Council members at large shall have resided in the City for at least two years next preceding their election." Whitehall Charter, § 3(a).

{¶ 3} In January 2025, Stein filed with the board a declaration of candidacy and a petition seeking nomination to represent Ward 4 on the Whitehall City Council. The board later certified Stein's name for placement on the November 4, 2025 general-election ballot. Elmore currently serves as an at-large member of the Whitehall City Council and is a qualified Whitehall elector.

{¶ 4} In February 2025, Elmore filed a protest against Stein's candidacy, and the board held a hearing on Elmore's protest in March. At the hearing, Elmore contended that the board should disqualify Stein from the ballot because she did not meet Section 3(a)'s two-year residency requirement. Elmore interpreted Section 3(a) as requiring ward candidates to have lived in their respective wards for the two years prior to the election at issue, meaning that for purposes of the November 4, 2025 general election, Stein must have lived in Ward 4 since November 4, 2023. In support of her claim that Stein did not meet this requirement,

Elmore pointed to, among other things, Stein's voting records. Elmore deduced from these records that Stein resided in Licking County—and thus outside Ward 4 and Whitehall—throughout 2023.

{¶ 5} Stein appeared at the protest hearing, admitted that she lived in Licking County throughout 2023, and argued that she should nonetheless remain a Ward 4 candidate for the Whitehall City Council. Stein maintained that under this court's decision in *State ex rel. Rocco v. Cuyahoga Cty. Bd. of Elections*, 2017-Ohio-4466, the Whitehall Charter required only that she have resided in Ward 4 for any two-year period preceding the election. Because she lived in Ward 4 from 2019 until 2022, she asserted, her candidacy complied with Section 3(a)'s two-year residency requirement. Alternatively, based on principles of grammar, she argued that the requirement applied only to at-large candidates and that ward candidates need only show that they resided in their ward at any preceding time. Stein argued that because she resided in her ward before the November 4, 2025 general election, her candidacy complied with Section 3(a) of the Whitehall Charter.

{¶ 6} At the conclusion of the hearing, the board denied Elmore's protest.

{¶ 7} Relators then filed this original action seeking a writ of prohibition to prevent the board from placing Stein's name on the ballot or, alternatively, a writ of mandamus ordering the board to grant Elmore's protest against Stein's candidacy. We denied relators' motion to expedite the case. 2025-Ohio-1090. After respondents each filed a motion to dismiss the action, we granted the motions as to relators' mandamus claim, denied the motions as to the prohibition claim, sua sponte ordered respondents to answer the complaint as to the prohibition claim, and sua sponte granted an alternative writ of prohibition, scheduling the submission of evidence and briefs. 2025-Ohio-1757.

{¶ 8} The case is ripe for our decision on relators' prohibition claim.

## II. ANALYSIS

{¶ 9} To be entitled to a writ of prohibition, relators must show that (1) the board has exercised quasi-judicial power, (2) the exercise of that power was unauthorized by law, and (3) denying the writ would result in injury for which no adequate remedy exists in the ordinary course of the law. *State ex rel. Elder v. Camplese*, 2015-Ohio-3628, ¶ 13. This court has observed that after a board of elections exercises its quasi-judicial power by denying a protest, relief in prohibition is available to prevent the placement of a name or issue on a ballot provided that the election has not yet been held. *See, e.g.*, *Tatman v. Fairfield Cty. Bd. of Elections*, 2004-Ohio-3701, ¶ 14.

{¶ 10} There is no dispute that the board exercised quasi-judicial power by denying Elmore's protest against Stein's candidacy. Nor is there a dispute that relators lack an adequate remedy in the ordinary course of the law due to the proximity of the November 4 election. Still more, the parties do not dispute the relevant facts. What remains to be decided, then, is a purely legal question concerning the meaning of Section 3(a) of the Whitehall Charter.

*A.* Rocco*'s dueling opinions and the meaning of "next preceding"*

{¶ 11} Relators argue that under Section 3(a) of the Whitehall Charter, a ward candidate for city council must have lived in her respective ward for at least the two years immediately before the election at issue. Because Stein indisputably did not live in Ward 4 during any part of 2023, they maintain, she should not have been certified for placement on the November 4, 2025 general-election ballot as a Ward 4 candidate.

{¶ 12} Relators insist that their understanding of Section 3(a) is borne out by its plain meaning, thereby obviating the need for interpretation. They correctly observe that when this court construes a city charter, general rules of statutory interpretation apply. *See State ex rel. Miller v. Hamilton Cty. Bd. of Elections*, 2021-Ohio-831, ¶ 33. Thus, because the Whitehall Charter conveys an

unambiguous meaning, the argument runs, the charter must be applied rather than interpreted. *See Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 14. But although relators start their argument with an appeal to plain meaning, they immediately pivot to parsing Section 3(a)'s use of the phrase "next preceding" against the backdrop of how that phrase was understood by members of this court in *Rocco*, 2017-Ohio-4466. In relators' view, Justice DeWine's dissenting opinion in that case advanced the correct understanding of the phrase—i.e., that "next preceding" should be understood as being synonymous with "immediately preceding."

{¶ 13} For their part, respondents urge us to follow the lead opinion in *Rocco*, under which the phrases "next preceding" and "immediately preceding" should be understood as having different meanings. Under respondents' view of Section 3(a), Stein need only have lived in Ward 4 for *any* two-year period preceding the upcoming election, not the period immediately preceding the election. Respondents emphasize that under Section 23(a) of the Whitehall Charter, mayoral candidates "shall have been residents of the City for three years *immediately prior* to the regular municipal election at which they seek election." (Emphasis added.) Respondents maintain that had the charter's drafters intended for Section 3(a) to mean what relators say it means, then the drafters would have used the same language for ward candidates that they used for mayoral candidates.

{¶ 14} Because *Rocco* looms large in this case, we begin our analysis by discussing that case. At issue there was whether Andrea Rocco should appear on the ballot as a candidate for the City of Westlake's law director. The Westlake Charter provided that

> "[t]he Director of Law shall be a qualified elector at the time of his election, shall have been a resident of the City for at least eighteen (18) months *immediately preceding* his election, an attorney at law duly admitted to the practice of law before the courts of the State of

Ohio, and been engaged in the active practice of law in Ohio for *a period of six (6) years next preceding his election.*"

(Emphasis added in *Rocco*.) *Rocco* at ¶ 8 (lead opinion), quoting Westlake Charter, art. IV, § 4.

{¶ 15} Multiple protests were brought against Rocco's candidacy, arguing that because she had not practiced law for the six years immediately preceding the upcoming election, her candidacy was defective. The Cuyahoga County Board of Elections sustained the protests, and Rocco then brought an original action in this court, seeking a writ of mandamus ordering the board to place her name on the ballot.

{¶ 16} Four separate opinions resulted. Although a majority of the court voted to grant the writ, the majority could not agree on a rationale. The lead opinion, authored by former Justice O'Donnell and joined by former Justice French, determined that the Westlake Charter required only that candidates for law director have been engaged in the active practice of law for *any* period of six years preceding the election at issue. *Id.*, 2017-Ohio-4466, at ¶ 2. Former Justice O'Neill concurred in judgment only and authored an opinion addressing a separate issue that has no bearing on this case. *See id.* at ¶ 23-24 (O'Neill, J., concurring in judgment only). Justice Fischer concurred in judgment only without an opinion. Former Chief Justice O'Connor dissented, opining that the charter required law-director candidates to have been engaged in the active practice of law during the six-year period immediately preceding the election. *Id.* at ¶ 35 (O'Connor, C.J., dissenting). And Justice DeWine authored a dissent joined by then-Justice Kennedy, expressing a view similar to the one advanced by former Chief Justice O'Connor. *See id.* at ¶ 52 (DeWine, J., dissenting).

{¶ 17} In support of the court's judgment granting the writ, the lead opinion explained that whereas the Westlake Charter uses the phrase "next preceding" in

prescribing the practice-of-law requirement, it uses the phrase "immediately preceding" in prescribing the residency requirement. Reasoning that the difference in wording must have been meant to convey a difference in meaning, the lead opinion inferred that the phrase "next preceding" meant something different from the phrase "immediately preceding," especially because the two phrases appeared in "close proximity" to each other. *Id.* at ¶ 16. As the lead opinion put it, had the charter's drafters intended to require candidates to have been engaged in the active practice of law during the six-year period immediately preceding the election at issue, they would have used wording to that effect, "[b]ut they did not do so." *Id.* The lead opinion also emphasized that under the charter, candidates had to have practiced law for "*a* period of six (6) years" rather than "*the* period of six (6) years." (Emphasis added in *Rocco.*) *Id.* at ¶ 13, quoting Westlake Charter, art. IV, § 4. Because "a" is an indefinite article conveying the sense of "any," the lead opinion reasoned, the charter required only that candidates have been engaged in the practice of law for *any* six-year period preceding the election. *See id.* Last, the lead opinion invoked the policy principle that doubts should be resolved in favor of those seeking office to enable the public to have the benefit of choice among all qualified persons. *Id.* at ¶ 18.

{¶ 18} The dissenters countered that the lead opinion's approach sapped the phrase "next preceding" of its ordinary meaning. They pointed out that under several lexical sources, there was no linguistic daylight between "next preceding" and "immediately preceding." *Id.* at ¶ 28 (O'Connor, C.J., dissenting); *id.* at ¶ 38 (DeWine, J., dissenting). As discussed below, they also observed that the Revised Code contains numerous instances in which it makes sense to construe "next preceding" as synonymous with "immediately preceding." *Id.* at ¶ 30-32 (O'Connor, C.J., dissenting); *id.* at ¶ 39-40 (DeWine, J., dissenting). And they also saw a sensible policy reflected in their construction of the charter—namely, that the voters would be better served by a candidate currently engaged in the practice of

law than by one whose practice had lain dormant. *Id.* at ¶ 33 (O'Connor, C.J., dissenting); *id.* at ¶ 51 (DeWine, J., dissenting).

**{¶ 19}** The above discussion of *Rocco* raises the question whether we should follow the lead opinion's analysis or the dissenters'.[1] A plurality opinion does not constitute binding authority, but a court may rely on a plurality opinion if it finds the opinion to be persuasive. *NASCAR Holdings, Inc. v. Testa*, 2017-Ohio-9118, ¶ 18. For the reasons explained below, we decline to follow the *Rocco* lead opinion here.

**{¶ 20}** As noted above, general rules of statutory interpretation apply in discerning the meaning of a city charter. *Miller*, 2021-Ohio-831, at ¶ 33. Foremost among these rules is that "'[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *State v. Reed*, 2020-Ohio-4255, ¶ 17, quoting Scalia and Garner, *Reading Law: The Interpretation of Legal Texts*, 56 (2012). In the absence of a legislative definition or technical meaning, it is proper to use dictionaries to discern a word's plain and ordinary meaning. *See Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798, ¶ 21; *see also Athens v. McClain*, 2020-Ohio-5146, ¶ 30 ("In determining the 'common and ordinary meaning' of words, courts may look to dictionaries."); *State v. Wells*, 2001-Ohio-3, ¶ 8 ("To determine the common, everyday meaning of a word, we have consistently used dictionary definitions.").

**{¶ 21}** The lead opinion in *Rocco* strayed from these principles. As the dissenters noted, the lead opinion did not even try to discover the plain and ordinary meaning of the words "next" and "immediately." *Rocco*, 2017-Ohio-4466, at ¶ 27 (O'Connor, C.J., dissenting); *id.* at ¶ 43 (DeWine, J., dissenting). Rather, the lead opinion inferred that because the Westlake Charter used the phrases "immediately

---

1. Although the *Rocco* lead opinion was followed in *State ex rel. Nasal v. Miami Cty. Bd. of Elections*, 2021-Ohio-2993, ¶ 10, and *State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 2018-Ohio-1660, ¶ 20, *Nasal* was a plurality decision and *Emhoff* relied on *Rocco*'s practice-of-law analysis, which is not an issue in this case.

preceding" and "next preceding" in close proximity to each other, the phrases must have different meanings. Before drawing this inference, however, the lead opinion should have first consulted proper lexical sources to determine the meaning of "next" and "immediately." *See Rancho* at ¶ 21. Doing so establishes that "next" and "immediately" are synonymous, as the dissenters carefully demonstrated.

{¶ 22} One source cited by the dissenters defined "next" as "immediately preceding." *Id.* at ¶ 28 (O'Connor, C.J., dissenting); *id.* at ¶ 38 (DeWine, J., dissenting), citing *Webster's Third New International Dictionary* (2002). Another defined "next" as "[n]earest; closest; *immediately* following." (Emphasis in original.) *Id.* at ¶ 28 (O'Connor, C.J., dissenting), citing *Black's Law Dictionary* (6th Ed. 1990). And a thesaurus identified "immediately" and "next" as synonyms of "nearest." *Id.*, citing *Roget's International Thesaurus* (4th Ed. 1977). What is more, as Justice DeWine observed, decisions by Ohio courts pointed in the same direction, deeming "next preceding" as synonymous with "immediately preceding." *Id.* at ¶ 41 (DeWine, J., dissenting), citing *Cincinnati v. Kirk*, 20 Ohio App. 452, 453 (1st Dist. 1925), and *Mansfield v. Hunt*, 10 Ohio C.D. 567, 569, 1900 WL 1068 (5th Dist. 1900). The lead opinion failed to furnish any lexical authorities or decisions by Ohio courts cutting the other way. *See id.* at ¶ 14-18 (lead opinion).

{¶ 23} Citing several examples, the dissenters also showed that the Revised Code uses "next preceding" synonymously with "immediately preceding." Consider two. First, Chief Justice O'Connor cited a statute requiring prior notice of public auctions of personal property by either or both of two methods: (1) by placing notice of the sale in a "'newspaper of general circulation in the county during a period of fifteen days next preceding the sale' " and/or (2) by posting an advertisement in five public places where the sale would take place "'not less than fifteen days next preceding the sale.' " *Id.* at ¶ 30 (O'Connor, C.J., dissenting), quoting R.C. 2113.41(A). In either event, the property had to be sold "'at a fixed price or for the best price obtainable.' " *Id.*, quoting R.C. 2113.40. As Chief Justice

O'Connor observed, under the lead opinion's interpretation of "next preceding," notice of the auction could be provided years in advance. But that outcome would plainly frustrate the statute's goal of ensuring attendance at the auction and concomitantly drive down the auction prices.

{¶ 24} A second example of the Revised Code's use of "next preceding" synonymously with "immediately preceding" can be found in Justice DeWine's *Rocco* dissent, which cites a statute concerning watershed-district budgets. He noted that the statute's third paragraph requires certification of an annual budget to the county commissioners and that its fourth paragraph directs the county commissioners to perform specified duties "'[u]pon receipt of the certification under the next preceding paragraph of this section.' " *Id.*, 2017-Ohio-4466, at ¶ 40 (DeWine, J., dissenting), quoting R.C. 6105.08. Reading the two paragraphs together, Justice DeWine explained, "[t]he fourth paragraph makes sense only if 'the next preceding paragraph' is the third paragraph, i.e., the immediately preceding paragraph." *Id.*

{¶ 25} Unlike the dissents, the lead opinion in *Rocco* offers no examples from the Revised Code to support its interpretation of the Westlake Charter provision at issue. *See id.* at ¶ 14-18 (lead opinion).

{¶ 26} The above discussion establishes that "immediately preceding" and "next preceding" are synonyms, and it undercuts the view expressed in the *Rocco* lead opinion that the phrases must have different meanings based on the canon known as the presumption of consistent usage. That canon provides that "a material variation in terms suggests a variation in meaning." (Boldface deleted.) *Reading Law* at 170. But although this court has invoked the canon in numerous decisions, *see, e.g.*, *Metro. Secs. Co. v. Warren State Bank*, 117 Ohio St. 69, 76 (1927); *Obetz v. McClain*, 2021-Ohio-1706, ¶ 21, it is not ironclad. As Justice DeWine pointed out, the canon has been frowned on by no less than the late Justice Joseph Story of the United States Supreme Court. *Rocco* at ¶ 46 (DeWine, J., dissenting) (noting

the criticism that the canon assumes an unrealistic level of perfection in legal drafting). As with most canons, the presumption of consistent usage makes sense when applied "pragmatically" but may be overcome "by context." *Reading Law* at 171. For the reasons given in the dissenting opinions of Chief Justice O'Connor and Justice DeWine, context should have trumped the presumption in *Rocco*.

{¶ 27} Applying the logic of the *Rocco* dissenters here, we conclude that Section 3(a) of the Whitehall Charter requires that ward candidates for the Whitehall City Council have resided in their respective wards for at least the two years *immediately preceding* the election at issue. The fact that Section 23(a) of the charter specifies that mayoral candidates "shall have been residents of the City for three years *immediately prior* to the regular municipal election at which they seek election" does not, as respondents argue, require a different result. (Emphasis added.) Respondents' view is that had the drafters of the charter intended to require ward candidates to have been residents of their respective wards for a period of time *immediately prior* to the election, as the charter provides with respect to mayoral candidates, the drafters would have used wording to that effect. But that argument, which appeals to the presumption of consistent usage, fails for all the reasons explained above. Moreover, unlike in *Rocco*, (1) the two competing phrases here are not in close proximity to each other and (2) Section 3(a) does not place the indefinite article "a" directly before the phrase "next preceding." Thus, even if we considered the lead opinion in *Rocco* persuasive, the difference between the structure of the charter at issue in that case and the structure of the charter at issue here would counsel against reliance on that opinion in this case.

{¶ 28} The fact that we do not apply the presumption of consistent usage in this case does not mean that it may never be invoked in a future case. Rather, as the dissenters in *Rocco* explained, there will be some cases—like this one—in which the canon should be set aside. Indeed, because "[n]o canon of interpretation is absolute," the force of a canon in any particular case "may be overcome by the

strength of differing principles that point in other directions." (Boldface deleted.) *Reading Law* at 59.

{¶ 29} In the end, it is plain to us that the board's denial of Elmore's protest was unauthorized by law because it failed to give proper effect to Section 3(a) of the Whitehall Charter. Because Section 3(a)'s use of the phrase "next preceding" means "immediately preceding," we conclude that Stein had to have resided in Ward 4 for at least the two years immediately preceding the November 4, 2025 general election. Because Stein does not meet this requirement, she cannot appear on the general-election ballot.

B. *Determining to whom the two-year residency requirement applies*

{¶ 30} Stein alone advances a more ambitious argument as to why we should deny the writ. In her view, the two-year residency requirement of Section 3(a) of the Whitehall Charter does not apply to her at all; rather, she says that the requirement applies only to candidates running to be at-large members of the city council. According to Stein, the requirement does not apply to ward candidates, because of the "and" that separates the reference to ward candidates from the reference to at-large candidates. By this logic, Stein need only have resided in Ward 4 at some point in time for any period—say, a day—to qualify as a Ward 4 candidate. Because the parties do not dispute that Stein has previously resided in Ward 4, adopting her argument would mean that her name should remain certified for placement on the ballot.

{¶ 31} Although courts use rules of grammar to determine the meaning of legal texts, *see Stiner v. Amazon, Inc.*, 2020-Ohio-4632, ¶ 14, Stein fails to identify a grammar principle that we could apply here to help determine whether, as she says, the residency requirement modifies only the clause applicable to at-large candidates. Instructive here is the series-qualifier canon, which provides that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the

entire series" (boldface deleted), *Reading Law* at 147. The *Reading Law* treatise offers an illustration of this canon, explaining that the phrase "[i]nstitutions or societies that are charitable in nature" (italics deleted) should be understood as meaning that "the institutions as well as the societies must be charitable." *Id.* at 148 (calling this an example of a "postpositive modifier" because the qualifying phrase is "positioned after" what it modifies). Providing a second illustration, the treatise says that a qualifying phrase should not carry over when a "determiner (*a*, *the*, *some*, etc.) [is] repeated before the second element." (Italics in original.) *Id.* Thus, the phrase "[t]he charitable institutions or the societies" (italics deleted) should be understood as meaning "that the societies need not be charitable" due to the presence of the second "the." *Id.*

{¶ 32} In this case, Section 3(a)'s constructions are parallel and there is no determiner before the second element, thus suggesting that the two-year residency requirement applies both to ward candidates and to at-large candidates. We recognize that Section 3(a) arguably does not fit neatly within the canon's technical definition, because the constructions at issue here are wordier than the examples in the treatise and are not strictly composed of either all nouns or verbs in a series. But another example, aided by a dose of pragmatism, helps explain why the underlying logic of the canon should nonetheless apply here.

{¶ 33} Suppose a school administrator were to say: "Middle-school students scheduled to participate in today's noon spelling bee shall announce their answers at the microphone in room 101 and elementary-school students scheduled to participate in today's noon spelling bee shall announce their answers at the microphone in room 102 without the aid of a dictionary." It makes no sense to think that the middle-school students are permitted to announce their answers by reading from a dictionary but that the elementary-school students are not. By similar logic, it makes no sense to think that Section 3(a) permits interloping ward candidates but forbids interloping at-large candidates. Plainly, both types of

candidates are expected to be responsive to their constituents and attuned to their interests, and the two-year residency requirement promotes that goal.

**{¶ 34}** In sum, we conclude that the two-year residency requirement of Section 3(a) of the Whitehall Charter applies both to ward candidates and to at-large candidates for the Whitehall City Council.

### III. CONCLUSION

**{¶ 35}** Because Stein's candidacy does not comply with Section 3(a) of the Whitehall Charter, we grant a writ of prohibition preventing the board from placing her name on the November 4, 2025 general-election ballot.

Writ granted.

————————————

McTigue & Colombo, L.L.C., J. Corey Colombo, Donald J. McTigue, and Helen G. Lohre, for relators.

Shayla D. Favor, Franklin County Prosecuting Attorney, and Brian D. Zagrocki, Assistant Prosecuting Attorney, for respondent Franklin County Board of Elections.

Taft, Stettinius & Hollister, L.L.P., Marc J. Kessler, and Jonathan N. Olivito, for respondent Holly Stein.

————————————