[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Spencer v. Stark Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-966.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-966

THE STATE EX REL. SPENCER *v.* STARK COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Spencer v. Stark Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-966.]**

*Elections—Prohibition—R.C. 3513.05—Writ sought to prevent board of elections from placing candidate on May 2026 primary-election ballot for Republican Party nomination for office of U.S. Representative for Sixth Ohio Congressional District—R.C. 3513.05 conveys that board of elections with whom a protest against candidacy is filed may consider whether candidate "has not fully complied with" R.C. Ch. 3513—Board of elections did not abuse its discretion or clearly disregard applicable law in denying protest against candidacy, because board correctly determined signature-validity issues involving candidate's petition at protest hearing—Writ denied.*

(No. 2026-0257—Submitted March 16, 2026—Decided March 20, 2026.)

IN PROHIBITION.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} In this expedited election case, relator, David Spencer, asks for a writ of prohibition to prevent respondents, the Stark County Board of Elections and its members, Dimitrios Pousoulides, Janet Weir Creighton, R. Shane Jackson, and James F. Mathews (collectively, "the Stark County board"), from placing respondent Jullie Kelley on the May 5, 2026 primary-election ballot as a candidate for the Republican Party nomination for the office of U.S. Representative for the Sixth Ohio Congressional District. Spencer protested Kelley's candidacy, contending that Kelley's candidate petition was one signature short of qualifying for the ballot. Because the Stark County board did not abuse its discretion or clearly disregard applicable law in denying Spencer's protest, we deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} In January 2026, Kelley filed a declaration of candidacy and petition with the Stark County board, seeking to be a candidate on the May 5, 2026 primary-election ballot for the Republican Party nomination for a seat in the U.S. House of Representatives representing the Sixth Ohio Congressional District. Ohio's sixth congressional district encompasses territory in the following ten counties: Belmont, Carroll, Columbiana, Harrison, Holmes, Jefferson, Mahoning, Stark, Tuscarawas, and Wayne. Kelley's candidate petition consisted of part-petitions purportedly signed by electors from Carroll, Columbiana, Mahoning, and Stark Counties.

{¶ 3} As required by R.C. 3513.05, the Stark County board transmitted to the boards of elections in Carroll, Columbiana, and Mahoning Counties the part-petitions containing purported signatures of electors from the respective counties. In accordance with R.C. 3513.05's 12th paragraph, each one of those boards

examined and determined the validity of the signatures on its respective part-petition and returned its determinations to the Stark County board. The Stark County board also examined and determined the validity of the signatures on its respective part-petition. Kelley's candidate petition contained 62 total signatures, of which 49 were valid based on the determinations of each board. The Stark County board summarized the results of the signature review conducted by the four boards as follows:

| | |
|---|---|
| 49 | Good |
| 5 | Wrong District |
| 2 | Not Registered |
| 1 | Not Registered at Address given |
| 1 | N/A [Candidate] |
| 1 | Illegible [not the signature of the person registered at this address] |
| 3 | Not Genuine |

(Bracketed text in original.)

{¶ 4} Two of the three "not genuine" signatures had been declared invalid by the Carroll County board: a signature by a person named Richard Smith and another by a person named Brandy Clayton. The third "not genuine" signature was by a person named Kimberly Brummel from Stark County. The "illegible" signature was by a person who had listed a voting address in Carroll County where the Carroll County board's records showed a person named Alexis George was registered.

{¶ 5} The Stark County board discussed Kelley's candidate petition at its February 17, 2026 regular meeting. According to its director, the Stark County board's common practice is to review signatures invalidated as "not genuine" when

a candidate's petition has an insufficient number of signatures to qualify for the ballot. Before the meeting, the Stark County board obtained the voter-registration files of Smith, Clayton, and George from the Carroll County board.

{¶ 6} At the February 17 meeting, the Stark County board discussed the signatures of Smith, Clayton, Brummel, and George. According to the meeting minutes, Board Member Mathews stated that "for three of the [invalid] signatures, there is not sufficient information to identify the voter" but that "[t]he signature of Richard Smith is the one that requires some discussion." Mathews stated that Smith's "'do over' signature looks a little closer to the signature on record," a sentiment with which Board Member Jackson agreed. The "do-over" refers to Smith apparently crossing out his first name and signing the candidate petition again. The Stark County board determined that Smith's signature was valid but did not accept the signatures of Clayton, Brummel, or George. As a result of accepting Smith's signature as valid, the Stark County board determined that Kelley's candidate petition contained the required number of valid signatures (50) and certified Kelley for placement on the May 5, 2026 primary-election ballot.

{¶ 7} On February 20, Spencer filed a written protest with the Stark County board in accordance with R.C. 3501.39 and 3513.05, challenging the Stark County board's certification placing Kelley's name on the primary-election ballot. Spencer contended that the Stark County board's own records showed that only 49 signatures on Kelley's candidate petition were validated, one less than the threshold required for certification to the ballot. Spencer also protested that other signatures were improperly counted, including signatures of several persons who "appear[ed] to be registered Democrats or [were] otherwise not qualified to participate in the Republican primary."

{¶ 8} The Stark County board held a hearing on Spencer's protest on March 3. At the hearing, Spencer argued that the Stark County board lacked authority under R.C. 3513.05 to revisit or make a contrary determination regarding the

genuineness of a signature from a different county. Spencer also presented evidence to support his claim that a person named David Lucas signed the Carroll County part-petition even though he was a member of the Democratic Party.

{¶ 9} Kelley also appeared and presented evidence at the protest hearing. Kelley testified regarding Smith's signature and presented an unsworn statement from Clayton, in which Clayton stated that she had, in fact, signed Kelley's candidate petition.[1] Finally, Kelley presented a sworn affidavit from Brummel, in which Brummel attested that she had signed Kelley's candidate petition.

{¶ 10} Following a deliberation, the Stark County board denied Spencer's protest. The Stark County board stood by its validation of Smith's signature and determined that Clayton's signature was valid, notwithstanding the determination by the Carroll County board that these signatures were invalid. The Stark County board agreed with Spencer that Lucas's signature on the Carroll County part-petition was invalid. It also determined that Brummel's signature on the Stark County part-petition was valid. The Stark County board therefore determined that Kelley's candidate petition had 51 valid signatures.

{¶ 11} Spencer filed this action on March 5, seeking a writ of prohibition to prevent the Stark County board from certifying or placing Kelley on the May 5, 2026 primary-election ballot as a candidate for the Republican Party nomination for the office of U.S. Representative for the Sixth Ohio Congressional District. Spencer further requests that this court order the Stark County board to vacate its decision certifying Kelley for placement on the ballot and to notify all other boards of elections within Ohio's sixth congressional district that Kelley's certification as a candidate has been vacated. This court set an expedited schedule for the respondents to file an answer to the complaint and for the parties to submit evidence and merit briefs. 2026-Ohio-752.

---

1. Clayton's written statement was signed before a notary but did not contain a jurat indicating that she had signed the statement under oath.

## II. ANALYSIS

{¶ 12} Spencer must establish three elements to obtain a writ of prohibition: (1) the respondents' exercise of judicial or quasi-judicial power, (2) the respondents' lack of authority to exercise that power, and (3) the absence of an adequate remedy in the ordinary course of the law. *State ex rel. Save Your Courthouse Commt. v. Medina*, 2019-Ohio-3737, ¶ 23. The third element is satisfied in this case because of the proximity of the primary election. *See State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 2005-Ohio-4758, ¶ 29 (no adequate remedy in the ordinary course of the law when election was less than two months away).

### A. Prohibition Claim Against Kelley

{¶ 13} Spencer sued Kelley as a respondent. Though Kelley has not appeared in this case, Spencer has not shown entitlement to relief against her. Spencer has neither alleged nor shown that Kelley exercised judicial or quasi-judicial power. Indeed, Kelley is the candidate whom Spencer is challenging; she did not hear or consider Spencer's protest. Accordingly, we deny the writ regarding Spencer's claim against Kelley. *See Campaign to Elect Larry Carver Sheriff v. Campaign to Elect Anthony Stankiewicz Sheriff*, 2004-Ohio-812, ¶ 10, 19.

### B. Prohibition Claim Against the Stark County Board

{¶ 14} A board of elections exercises quasi-judicial power when it conducts a protest hearing pursuant to statute. *Save Your Courthouse Commt.* at ¶ 29. Spencer's entitlement to a writ of prohibition against the Stark County board therefore turns on whether its exercise of quasi-judicial power was unauthorized by law. On that issue, we determine whether the Stark County board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable law. *State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 2009-Ohio-4980, ¶ 16. There is no allegation of fraud or corruption here. Therefore, the relevant inquiry is whether the Stark County board abused its

discretion or clearly disregarded applicable law in denying Spencer's protest and certifying Kelley for placement on the primary-election ballot.

{¶ 15} Spencer argues that the Stark County board exceeded its legal authority under R.C. 3513.05 by revisiting and overturning the signature-validity determination of the Carroll County board. Spencer contends in his merit brief that under R.C. 3513.05, the determination of signature validity "is within the exclusive bailiwick or authority of the board of elections [where] the person whose signature at issue is registered."

*1. Petition certification and protest procedure*

{¶ 16} Under R.C. 3513.05, a person desiring to become a candidate for a party nomination for a congressional office must file a declaration of candidacy and petition no later than 4:00 p.m. on the 90th day before the day of the primary election. To be valid, the petition must contain the signatures of at least 50 qualified electors who are members of the same political party as the candidate. *Id.* When, as here, the declaration of candidacy is for a congressional district that encompasses territory in more than one county, the petition must be filed with the board of elections of the most populous county within the district. *Id.* Stark County is the most populous county in Ohio's sixth congressional district. *See* Ohio Secretary of State, *County Populations and Filing Locations, Ohio Congressional Districts*, available at https://www.ohiosos.gov/assets/uscongressionaldistricts-2026-2032-adopted-2025-10-31-mostpopulouscounty.pdf (accessed Mar. 20, 2026) [https://perma.cc/4B8A-L6HQ].

{¶ 17} The board of elections with which the petition is filed shall promptly transmit to the board of elections of each other county within the district the petition papers that "purport to contain signatures of electors" from those counties. R.C. 3513.05. Each board receiving petitions

shall, not later than the seventy-eighth day before the day of [the] primary election, examine and determine the validity or invalidity of the signatures on the petition papers so transmitted to or filed with it . . . and shall return to each other board all petition papers transmitted to it by such board, together with its certification of its determination as to the validity or invalidity of the signatures thereon. *All other matters affecting the validity or invalidity of such petition papers shall be determined by . . . the board with whom such petition papers were filed*.

(Emphasis added.) *Id.*

{¶ 18} If the candidate's petition is determined to be valid, any qualified elector who is a member of the same political party as the candidate and who is eligible to vote at the primary election may file a protest against the person's candidacy for a party nomination. *Id.* The protest is heard by the board of elections with whom the candidate filed her declaration of candidacy and petition—i.e., the Stark County board in this case. *See id.*; *see also* R.C. 3501.39(A)(1) (providing that a board of elections "shall accept" any petition described in R.C. 3501.38, including declarations of candidacy, nominating petitions, and other petitions filed with a board of elections, unless a written protest against the petition or candidacy "is filed, a hearing is held, and a determination is made . . . that the petition is invalid, in accordance with any section of the Revised Code providing a protest procedure").

{¶ 19} At a protest hearing, the board of elections must "hear the protest and determine the validity or invalidity of the declaration of candidacy and petition." R.C. 3513.05. The board must determine that the declaration of candidacy and petition are invalid if it finds "that such candidate is not an elector of the state, district, county, or political subdivision in which the candidate seeks a

party nomination or election to an office or position." *Id.* The board must also determine that the declaration of candidacy and petition are invalid if it finds that the candidate "has not fully complied" with R.C. Ch. 3513. *Id.*

### 2. *The authority of the board of elections of the most populous county of a multicounty congressional district*

{¶ 20} The thrust of Spencer's prohibition claim is that the Stark County board exceeded the authority granted to it by R.C. 3513.05 when it reviewed—and overrode—the Carroll County board's determination of the validity of two signatures of electors from Carroll County. Spencer relies principally on the final two sentences of R.C. 3513.05's 12th paragraph, which addresses the process by which candidate petitions in multicounty congressional districts are reviewed.

{¶ 21} After receiving part-petitions from the board of elections of the most populous county of a multicounty congressional district, each individual board of elections must examine the signatures on the part-petitions, ascertain their validity, and then return the petition papers to the board of elections that sent them, "together with its certification of its determination as to the validity or invalidity of the signatures thereon." R.C. 3513.05. "*All other matters* affecting the validity or invalidity of such petition papers shall be determined by . . . the board with whom such petition papers were filed." (Emphasis added.) *Id.* Spencer argues that the emphasized language makes clear that the Stark County board does not have the power to revisit the Carroll County board's determination of the validity of signatures of electors from Carroll County.

{¶ 22} Analysis of Spencer's statutory argument begins with the plain language of the statute. *See Total Renal Care, Inc. v. Harris*, 2024-Ohio-5685, ¶ 13. In this review, we are required to "read words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Russell v. Thornton*, 2006-Ohio-5858, ¶ 11.

{¶ 23} Under the process set forth in R.C. 3513.05's 12th paragraph, the Carroll County board performed its statutory duty of examining the signatures on the part-petitions transmitted to it and returned those part-petitions to the Stark County board with its certification of its determination that there were 43 valid signatures and 6 invalid signatures, including the invalid signatures of Smith and Clayton. The Carroll County board could make no other determination with respect to the validity or invalidity of Kelley's petition papers because under R.C. 3513.05's 12th paragraph, "[a]ll other matters affecting the validity or invalidity of such petition papers" were committed to the authority of the Stark County board.

{¶ 24} But the phrase "[a]ll other matters" in the statute also limits the authority of the Stark County board—i.e., the board of elections of the most populous county of a multicounty congressional district—at the precertification stage of reviewing a candidate's petition. "Evaluating the context in which a word is written is essential to a fair reading of the text." *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 9. And the context here demonstrates a division of responsibility regarding part-petitions filed by a candidate for a party nomination for a congressional office representing a multicounty congressional district.

{¶ 25} The individual boards of elections receiving part-petitions must determine the validity of signatures on those part-petitions, and the board of elections of the most populous county of a multicounty congressional district determines "[a]ll other matters" related to the validity of the petition. R.C. 3513.05. When the boards of elections of the less populated counties returned the part-petitions to the Stark County board with their certifications of the validity and invalidity of the signatures on those part-petitions, the Stark County board could not revisit the signature-validity determinations of those boards. The Stark County board could determine that a part-petition returned from another board of elections was invalid for another reason, but the validity or invalidity of signatures of electors from other counties was outside of this purview. Thus, Spencer is correct that at

10

the February 17, 2026 regular meeting at which the Stark County board approved Kelley's candidate petition, the Stark County board should not have determined that Smith's signature was valid.

*3. The Stark County board correctly determined the signature-validity issues at the protest hearing*

{¶ 26} Our conclusion that the Stark County board exceeded its authority at the precertification stage does not end the matter. When Spencer filed his written protest against Kelley's candidacy, the Stark County board, i.e., "the election officials with whom the declaration of candidacy and petition was filed," R.C. 3513.05, was required to hold a hearing on the protest. With respect to the protest hearing, R.C. 3513.05's 13th paragraph dictates:

At the time fixed [for the protest hearing], such election officials shall hear the protest and determine the validity or invalidity of the declaration of candidacy and petition. If they find that such candidate is not an elector of the state, district, county, or political subdivision in which the candidate seeks a party nomination . . . or has not fully complied with [R.C. Ch. 3513], the candidate's declaration of candidacy and petition shall be determined to be invalid and shall be rejected; otherwise, it shall be determined to be valid. That determination shall be final.

{¶ 27} As contemplated by the statute, Kelley appeared at the protest hearing. *See id.* (person whose candidacy is protested shall be provided notice of the protest hearing). Kelley presented evidence to support the validity of the two signatures that the Carroll County board had found not genuine and of the signature that the Stark County board had found not genuine. Spencer does not argue that the Stark County board erred in allowing Kelley to present evidence. (Indeed,

Spencer himself presented evidence at the protest hearing that the Carroll County board's validation of Lucas's signature was erroneous.) However, Spencer contends that the Stark County board's authority at the protest stage is the same as it is at the precertification stage. That is, Spencer argues that in considering the validity of a candidate's petition at a protest hearing, the board of elections tasked with deciding the protest is not permitted under R.C. 3513.05 to revisit or make a contrary determination regarding the validity of a purported signature of an elector from a different county In other words, Spencer posits that in hearing and considering his protest, the Stark County board was required to give absolute deference to the Carroll County board's signature-validity determination. We disagree with Spencer on this point because R.C. 3513.05 conveys that the board of elections with whom a protest against candidacy is filed may consider, relevant here, whether the candidate "has not fully complied with" R.C. Ch. 3513.

{¶ 28} Under R.C. 3513.05, the Stark County board was required to "hear the protest and determine the validity or invalidity of the declaration of candidacy and petition." If the Stark County board had concluded that Kelley had not fully complied with R.C. Ch. 3513, it had to declare that her declaration of candidacy and petition was invalid; otherwise, it had to determine that Kelley's declaration of candidacy and petition was valid. *See* R.C. 3513.05. This grant of authority to the Stark County board at the protest hearing necessarily included the authority to determine whether the signatures on the part-petitions of electors from other counties in Ohio's sixth congressional district were valid. Unlike the precertification duties set forth in R.C. 3513.05's 12th paragraph, the duties of the board of elections of the most populous county of a multicounty congressional district are not limited to examining issues other than signature validity when it considers a protest filed under R.C. 3513.05's 13th paragraph that is based on allegedly invalid signatures.

12

{¶ 29} Although the statute's language and structure alone are enough to reject Spencer's position, this court's decision in *State ex rel. Owens v. Brunner*, 2010-Ohio-1374, further confirms that Spencer is not entitled to a writ of prohibition against the Stark County board. *Owens* involved a candidate for the Constitution Party nomination for the office of attorney general. Owens filed his declaration of candidacy and petition with the secretary of state in accordance with R.C. 3513.05. As directed by R.C. 3513.05, the secretary transmitted Owens's part-petitions to the pertinent county boards of elections for an examination of the signatures of electors from the respective counties. The secretary determined that Owens did not qualify for the ballot, because his petition lacked enough valid signatures. Owens contended that the Franklin County Board of Elections incorrectly invalidated many of the signatures and that a correct determination of those signatures would have qualified him for the ballot.

{¶ 30} In an expedited election action, we granted a writ of mandamus compelling the secretary of state to certify Owens's candidacy for his party's nomination for the office of attorney general and to instruct the boards of elections to place his name on the primary-election ballot. *Owens* at ¶ 38. In so doing, we rejected the secretary's argument that she was not subject to mandamus "for an alleged error committed by a board of elections in determining the validity of part-petition signatures sent to the board by the secretary." *Id.* at ¶ 27. We held that an aggrieved prospective candidate for statewide office, who is challenging the secretary's decision not to place his name as a candidate on the primary-election ballot, correctly pursues mandamus relief against the secretary "even if he is challenging an election board's [signature] verification decision." *Id.* at ¶ 28.

{¶ 31} Though *Owens* involved a candidate's action for a writ of mandamus to compel placement of the candidate on the primary-election ballot, our reasoning in *Owens* confirms that the Stark County board did not exceed its authority when it considered Spencer's protest. When making the initial determination in *Owens*

about whether the candidate qualified for the ballot, the secretary of state could not, consistent with R.C. 3513.05's 12th paragraph, override the Franklin County board's signature-validity determination. The precertification limitation on the secretary's power did not, however, prevent the aggrieved candidate from litigating the signature-validity issue in a mandamus action seeking the candidate's placement on the ballot. Because it was ultimately the secretary's duty to certify the form of the ballots with the names of the candidates, the issue whether the Franklin County board incorrectly determined signatures to be invalid was an appropriate issue to be determined in a mandamus action filed against the secretary. *See Owens* at ¶ 28-30. Thus, we granted a writ of mandamus ordering the secretary to place Owens on the ballot when we determined, based on the evidence submitted in that case, that the Franklin County board had incorrectly rejected many of the signatures on the Franklin County part-petitions. *Id.* at ¶ 37-38.

{¶ 32} Just as the secretary of state in *Owens* had the ultimate responsibility to determine the validity of a declaration of candidacy and petition for a statewide office, so too did the Stark County board—i.e., the board of elections of the most populous county of a multicounty congressional district—have the statutory responsibility to decide at the protest hearing whether Kelley's petition fully complied with R.C. Ch. 3513. *See* R.C. 3513.05. The Stark County board also has the statutory responsibility to certify to the board of elections of each county in Ohio's sixth congressional district the names of the candidates to be printed on the primary-election ballot. *Id.* Accordingly, all matters related to the validity of Kelley's petition were correctly before the Stark County board for consideration and decision at the protest hearing.

{¶ 33} For these reasons, the Stark County board correctly considered Kelley's evidence that three signatures, including two signatures of electors from Carroll County, had been incorrectly invalidated. Spencer raises no issue with respect to the evidence Kelley presented establishing that these three signatures

14

were valid. Because including those signatures resulted in Kelley's qualifying for the primary-election ballot, the Stark County board correctly denied Spencer's protest.

## III. CONCLUSION

{¶ 34} The Stark County board did not abuse its discretion or clearly disregard applicable law in denying Spencer's protest and certifying Kelley for placement on the May 5, 2026 primary-election ballot. We therefore deny the writ.

Writ denied.

————————————

The Law Firm of Curt C. Hartman and Curt C. Hartman, for relator.

Kyle L. Stone, Stark County Prosecuting Attorney, and Deborah A. Dawson and Jessica L. Logothetides, Assistant Prosecuting Attorneys, for respondents Stark County Board of Elections, Dimitrios Pousoulides, Janet Weir Creighton, R. Shane Jackson, and James F. Mathews.

————————————