[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Shannon v. Ogg*, Slip Opinion No. 2026-Ohio-1599.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1599

THE STATE EX REL. SHANNON *v.* OGG, CLERK OF COUNCIL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Shannon v. Ogg*, Slip Opinion No. 2026-Ohio-1599.]**

*Elections—Mandamus—Writ sought to compel clerk of city council to determine that petitions for recall election do not meet city charter's signature requirements and to certify the particulars in which the petitions are defective to the person who filed them—City-charter provision requires that a recall petition must include a number of signatures equal to at least 15 percent of electors who voted at last regular municipal election at which mayor's office was on ballot, not simply 15 percent of the electors who cast a vote for mayor—Writ granted.*

(No. 2026-0433—Submitted April 27, 2026—Decided May 3, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by DEWINE, SMITH, DETERS, and HAWKINS, JJ. FISCHER, J., dissented, with an opinion joined by KENNEDY, C.J.,

and SHANAHAN, J. JASON P. SMITH, J., of the Fourth District Court of Appeals, sat for BRUNNER, J.

**Per Curiam.**

{¶ 1} In this expedited election case, electors in the City of Whitehall filed petitions to hold a recall election for Whitehall's mayor and two of its councilmembers. Respondent, Julie A. Ogg, the clerk of Whitehall's city council, certified that the petitions contained enough signatures to require a recall election. Relator, Michael Shannon, a Whitehall elector, filed an original action in mandamus seeking a writ ordering Ogg to determine that the petitions did not contain a sufficient number of signatures. He argues that Ogg wrongly interpreted Whitehall's charter when determining how many petition signatures were required to hold a recall election.

{¶ 2} We conclude that Ogg improperly determined that the petitions contained a sufficient number of signatures. We therefore grant a writ of mandamus ordering Ogg to determine that the recall petitions did not contain a sufficient number of signatures and to certify the particulars in which the petitions are defective. Under the charter, the petitioners will have ten days to cure the deficiency and submit additional signatures to Ogg.

## I. BACKGROUND

### A. Legal background

{¶ 3} Whitehall is a charter city in Franklin County. The Whitehall Charter provides for recall elections of Whitehall's elected officers. Electors seeking to recall an officer must file a petition with the clerk of council demanding the officer's removal. Whitehall Charter § 68. To bring about a recall election to remove the mayor or an at-large city council member from office, "[s]uch petition shall be signed by at least that number of electors which equals fifteen percent in

2

number of the electors voting at the last preceding regular municipal election for the office of Mayor." *Id.*

{¶ 4} Within twenty days after the electors file the recall petition, the clerk must determine whether the petition meets the requirements of the charter. *Id*. If the clerk certifies that the petition is sufficient, the subject officer is given five days to resign, and if the officer does not, city council must set a date for a recall election. *Id.* The election must be held within sixty days of the subject officer's receipt of the certification. *Id.* If, however, the clerk certifies that the petition is defective, the electors have ten days "to make the petition sufficient." *Id.*

### B. Factual and procedural history

{¶ 5} Michael Bivens is the elected mayor of Whitehall. Lori Elmore and Amy Harcar are elected at-large members of Whitehall's city council. On March 11, 2026, Whitehall electors filed recall petitions against Bivens, Elmore, and Harcar with Ogg, Whitehall's clerk of council. Ogg forwarded the petitions to the Franklin County Board of Elections for assistance with validating the signatures. The board of elections notified the city that the petition against Mayor Bivens contained 444 valid signatures and that the petitions against Councilmembers Elmore and Harcar each contained 447 valid signatures.

{¶ 6} The mayor of Whitehall is elected every four years and was last elected at the 2023 regular municipal election. A total of 3,913 Whitehall electors voted at that election. Only 2,827 electors, however, voted for the office of mayor at that election. Ogg interpreted the charter as requiring that recall petitions contain a number of signatures totaling at least 15 percent of the number of electors who voted for mayor at the most recent regular municipal election. Fifteen percent of 2,827 is 425. Because each petition contained more than 425 valid signatures, Ogg determined that each petition contained a sufficient number of signatures.

{¶ 7} Ogg certified that each petition was sufficient and notified the officer subject to each petition. None of the three officers resigned.

**{¶ 8}** On April 9, 2026, Shannon, a Whitehall elector, filed his amended complaint for a writ of mandamus. Shannon seeks a writ "ordering Respondent to determine that the recall petitions do not meet the signature requirement of the City of Whitehall Charter, and to certify the particulars in which the petition[s are] defective to the person who filed the petition[s]."[1]

**{¶ 9}** Shannon argues that Ogg used the wrong number to determine whether the petitions contained a sufficient number of signatures. Shannon argues that the charter requires a number of signatures equal to at least 15 percent of all electors who voted at the last regular election at which the mayor was elected, including those electors who did not vote for the office of mayor. That number of electors was 3,913, of which 15 percent is 587. Because none of the recall petitions contained at least 587 valid signatures, Shannon argues that Ogg was required to determine that the petitions were insufficient.

**{¶ 10}** At the time Shannon filed his amended complaint, city council had not yet set the date of the recall election, but on April 14 it scheduled the election for May 28.

## II. LEGAL ANALYSIS

### A. Mandamus standard

**{¶ 11}** To obtain a writ of mandamus, Shannon must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the Ogg to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Valentine v. Schoen*, 2024-Ohio-3439, ¶ 7. Shannon lacks an adequate remedy in the ordinary course of the law due to the proximity of the election. *See id.*

---

1. In his amended complaint, Shannon requested an award of attorney fees. He does not request attorney fees in his brief, however, and he has therefore waived the request. *See State ex rel. Valentine v. Schoen*, 2024-Ohio-3439, ¶ 14; *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 2007-Ohio-3831, ¶ 83.

{¶ 12} A writ of mandamus may issue compelling a clerk of city council to determine that a petition filed with the clerk is sufficient. *State ex rel. Julnes v. S. Euclid City Council*, 2011-Ohio-4485, ¶ 45; *State ex rel. Gil-Llamas v. Hardin*, 2021-Ohio-1508, ¶ 46. Here, Shannon seeks a writ compelling the clerk to determine that a petition is *in*sufficient. But this does not mean that what Shannon actually wants is a declaratory judgment and a prohibitory injunction. *See State ex rel. Obojski v. Perciak*, 2007-Ohio-2453, ¶ 13 (court lacks jurisdiction over a mandamus action when the real objects sought are declaratory judgment and prohibitory injunction). Rather, a writ compelling Ogg to determine that the petitions are insufficient would require Ogg to take affirmative action, including providing the petitioners with a certification of the particulars in which the petitions are defective, so mandamus is an appropriate mechanism to compel Ogg to perform that duty. Providing the certificate triggers a ten-day period in which the petitioners may make the petitions sufficient.

{¶ 13} To show the remaining requirements for a writ of mandamus to issue, Shannon must show that Ogg abused her discretion or disregarded clearly applicable law when certifying the petitions. *See Julnes* at ¶ 10, 28.

### B. *Required number of signatures*

{¶ 14} Shannon claims that Ogg used an improper number of required signatures when she certified that the recall petitions contained a sufficient number of signatures. Whitehall's charter provides, in relevant part, that a recall "petition shall be signed by at least that number of electors which equals fifteen percent in number of the electors voting at the last preceding regular municipal election for the office of Mayor." Whitehall Charter § 68.

{¶ 15} Ogg interpreted the charter as requiring that the recall petitions be signed by at least 15 percent of the number of electors who voted for mayor at the last preceding regular municipal election at which the office of mayor was on the ballot. Such an interpretation meant that the petitions needed 425 valid signatures.

Shannon, however, argues that the charter requires that each petition be signed by 15 percent of the number of electors who voted at the last preceding regular municipal election at which the office of mayor was on the ballot, regardless of whether the electors actually voted for mayor. Shannon's interpretation means that the recall petitions needed 587 valid signatures.

{¶ 16} "[W]hen this court construes a city charter, general rules of statutory interpretation apply." *State ex rel. Elmore v. Franklin Cty. Bd. of Elections*, 2025-Ohio-2585, ¶ 12. The court begins by reviewing the plain language of a provision. *State ex rel. Spencer v. Stark Cty. Bd. of Elections*, 2026-Ohio-966, ¶ 22. It reads words and phrases in context and construes them in accordance with rules of grammar and common usage. *Id.*

{¶ 17} Shannon bases his interpretation of the charter provision on the grammatical rule of the last antecedent. Under that rule, "'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.' " (Ellipsis added in *Look Ahead Am.*) *Look Ahead Am. v. Stark Cty. Bd. of Elections*, 2024-Ohio-2691, ¶ 20, quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see Ohio Neighborhood Fin., Inc. v. Scott*, 2014-Ohio-2440, ¶ 26 ("It is an accepted rule of construction that in the absence of an expressed contrary intention, referential and qualifying words and phrases refer solely to the last antecedent."). Applying the rule to the charter provision, which states that a recall "petition shall be signed by at least that number of electors which equals fifteen percent in number of the electors voting at the last preceding regular municipal election for the office of Mayor," Whitehall Charter § 68, Shannon argues that the clause "for the office of Mayor" modifies the immediately preceding phrase "at the last preceding regular municipal election." Under the Whitehall Charter, the mayor and several other officers are elected every four years. *See* Whitehall Charter § 3(e) and 23(a); *see also id.* at § 69. But regular municipal elections are held every two years for the election of city officers*, id.* at § 69—so the mayor is not on the ballot in every

regular municipal election. Shannon argues that the effect of the phrase "for the office of Mayor" is to limit "the last preceding regular municipal election" to the last preceding regular municipal election *at which the mayor was on the ballot*.

{¶ 18} For her part, Ogg argues that interpreting the charter provision to require a number of signatures equal to 15 percent of electors who voted *for mayor* at the most recent regular municipal election is the most natural reading of the provision. She argues that this interpretation "most naturally links the subject—the electors—to the act that they performed—voting for the office of Mayor." Ogg notes that the charter provision uses the language "*for* the office of Mayor" rather than language such as "*at* the last preceding regular municipal election *at* which the office of the Mayor was on the ballot." (Emphasis added.) Ogg points out that we have interpreted a petition-signature charter provision that used the language "the total number of electors voting for the candidates for Councilmember" as meaning electors voting for that specific office, *State ex rel. Blackman v. Hitte*, 5 Ohio St.3d 156, 158 (1983). But in that case, the charter language was structured differently than the language in Whitehall's charter. Here, "for the office of Mayor" immediately follows "at the last preceding regular municipal election."

{¶ 19} Ogg further supports the distinction between "for" and "at" by citing to the Whitehall Charter's definition of a regular municipal election. Section 69 of the Whitehall Charter provides, "A regular municipal election for the purpose of the election of officers provided for in this Charter shall be held on the first Tuesday after the first Monday in November in odd numbered years. Elections so held shall be known as regular municipal elections." "A regular municipal election"—written in the singular—is held to elect multiple officers, and multiple officers are elected at each of those elections, *see* Whitehall Charter § 3(e), 23(a), 26(a), 41(a), and 45(a). Thus, arguably, a regular municipal election is not held *for* a specific office. Rather, one or more officers are elected *at* a regular municipal election. Ogg argues that if the clause "for the office of Mayor" is read as identifying the last municipal

election at which the mayor was elected, such a reading would improperly narrow the definition of a regular municipal election. Rather, Ogg argues, the clause should be read to specify those electors who voted for mayor.

{¶ 20} Ogg argues that the rule of the last antecedent is inapplicable because it does not apply when a provision expresses a contrary intention. *See Hedges v. Nationwide Mut. Ins. Co.*, 2006-Ohio-1926, ¶ 24, quoting *Carter v. Youngstown*, 146 Ohio St. 203, 209 (1946) ("'[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent' "). Ogg argues that the charter provision's most natural reading, as evidenced by its use of the clause "for the office of Mayor" rather than "at which the office of the Mayor was on the ballot" and the ordinary usage of "for" and "at" in election statutes, is that only electors voting *for the office of mayor* are counted.

{¶ 21} Both parties point to Ohio Constitution and Revised Code provisions related to petition signatures that they argue support their respective interpretations. The Ohio Constitution provides that the number of signatures required for a statewide initiative or referendum petition shall be determined based on "the total number of votes cast for the office of governor at the last preceding election therefor." Ohio Const., art. II, § 1g; *see also* art. X, § 4 (same language defining the petition-signature requirement to choose a county-charter commission and adopt a county charter). These sections clearly provide that the number of required signatures is based on the number of electors who voted for governor at the last election at which that office was elected. The parties point to Revised Code sections that contain similar language. *See, e.g.*, R.C. 519.12(H) (minimum signature requirement for a township-zoning-referendum petition).

{¶ 22} In contrast, other statutes provide that the number of required signatures is based on the number of electors voting at an election without specifying a particular office. *See, e.g.*, R.C. 1332.05(A)(2) (petition regarding referendum on public-cable-service ordinance or resolution). Notably, one of these

8

statutes governs recall elections for elected officers of statutory municipalities. R.C. 705.92(A) provides that a recall petition be "signed by qualified electors equal in number to at least fifteen per cent of the total votes cast at the most recent regular municipal election."

{¶ 23} But overall, these statutes and constitutional provisions do not provide significant support for either party's argument; rather, they show that Whitehall chose a different (and less clear) sentence structure when drafting its recall provision. Neither party points to a statute or charter with the same sentence structure as Whitehall's recall provision, which includes the phrase "number of the electors voting at the last preceding . . . election for [a specific] office," Whitehall Charter § 68, but does not include an earlier clause tying the votes to a specific office.

{¶ 24} The recall provision is not a model of clarity. But in our opinion, the best interpretation of the provision is that a recall petition must include a number of signatures equal to at least 15 percent of electors who voted at the most recent election at which a mayor was elected, regardless of whether the electors voted for mayor.

{¶ 25} Reading the clause "for the office of Mayor" as modifying only the preceding clause "the last preceding regular municipal election" complies with the grammatical canons of construction. As an initial matter, although Shannon identifies the applicable canon as the rule of the last antecedent, the sentence structure of the recall provision more accurately falls under the nearest-reasonable-referent canon. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 152-153 (2012). The rule of the last antecedent applies to pronouns or demonstrative adjectives, and the sentence or statute involved usually contains a parallel list or series. *See id.* at 144, 152. In contrast, the nearest-reasonable-referent canon applies to adverbial and adjectival phrases and provides that "a

prepositive or postpositive modifier normally applies only to the nearest reasonable referent," *id.* at 152.

{¶ 26} Regardless of the exact terminology of the canon, "'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows,' " (ellipsis added in *Look Ahead Am.*) *id.*, 2024-Ohio-2691, at ¶ 20, quoting *Barnhart*, 540 U.S. at 26. Applying the rule to the recall provision, the phrase "for the office of Mayor" modifies the immediately preceding phrase "the most recent regular municipal election." It does not modify the earlier word "voting." Such a reading is not unnatural. *See Scott*, 2014-Ohio-2440, at ¶ 26 (applying rule of last antecedent and reading statute according to "the natural and most obvious import of the statutory language").

{¶ 27} The Whitehall Charter defines a regular municipal election as an election at which multiple officers are elected, *see* Whitehall Charter § 69, so describing such an election as an election "for" a specific office is a bit of a misnomer. But the recall provision's use of the words "for the office of Mayor" rather than "at which the mayor was elected" does not override the natural reading of the provision as shown by the nearest-reasonable-referent canon.

{¶ 28} Moreover, adopting Ogg's preferred interpretation would require us to add language to the recall provision. If the charter is interpreted to require signatures equal to 15 percent of electors who voted for mayor "at the last preceding regular municipal election" and is read literally, *zero* signatures could be required. Here, the petitioners filed their petitions in March 2026. The last preceding regular municipal election was in November 2025. But the office of mayor was not on the ballot in November 2025, so *no* electors voted for mayor. Adopting Ogg's interpretation would require us to add words to the charter provision to clarify that the relevant election is the most recent election *at which the mayor was elected*; that is, the provision would have to be modified to identify "the electors voting at the last preceding regular municipal election *at which the mayor was elected* for the

10

office of Mayor." But the italicized language does *not* appear in the charter provision, *see* Whitehall Charter § 68, and we will not rewrite the provision to such an extent.

{¶ 29} Ogg makes several additional arguments in support of her preferred interpretation, but we do not find these arguments persuasive. Ogg argues that the rule of the last antecedent (or nearest-reasonable-referent) does not apply, because of a different interpretative canon—the series-qualifier canon. "'When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.' " *Elmore*, 2025-Ohio-2585, at ¶ 31, quoting Scalia & Garner, *Reading Law*, at 147. *Reading Law* offers an illustrative example of the canon, explaining that the phrase "[i]nstitutions or societies that are charitable in nature" (italics deleted) should be understood as meaning that "the institutions as well as the societies must be charitable." *Reading Law* at 148; *see Elmore* at ¶ 31. Ogg argues that, in the charter provision, the "introductory phrase . . . 'electors voting' refers to and represents the single, unified concept of those who cast votes, and the latter phrase 'for the office of Mayor' naturally qualifies this entire concept rather than simply the temporal phrase 'last preceding regular municipal election.' "

{¶ 30} However, the series-qualifier canon does not apply. Simply put, "electors voting at the last preceding regular municipal election" is not a series, and thus there is no series that "for the office of Mayor" could qualify. For purposes of the canon, a series generally includes two or more nouns or verbs, which are separated by the conjunctive "and" or the disjunctive "or." *See Reading Law* at 147-149. A series need not consist solely of either nouns or verbs, *see Elmore* at ¶ 32, but the logic of the canon requires that a series consist of two or more distinct items. Here, in the phrase "electors voting at the most recent municipal election," there is no series. We will not apply the canon if there is not a clause to which the canon would apply. *See Allen v. United States*, 83 F.4th 564, 572 (6th Cir. 2023).

{¶ 31} Finally, Ogg argues that past practice in Whitehall supports that the number of signatures a recall petition must contain is calculated based on the number of electors who voted for mayor at the last regular election for the office of mayor. In addition to recall petitions, Whitehall's charter allows for initiative and referendum petitions, and those provisions contain similar signature requirements as the recall provision. *See* Whitehall Charter § 15 and 16. Ogg submitted evidence showing that in 2021, a referendum petition was filed challenging a Whitehall ordinance. Ogg asserts that the city attorney at that time calculated the required number of signatures based on the number of electors who voted for mayor at the last election—not all electors voting for any office at that election—and Ogg argues that this historical practice supports her interpretation of the recall provision. But even assuming the city attorney did so determine the necessary number of signatures for that referendum petition, that determination makes little difference to the analysis here. Because conventional tools of statutory construction are adequate to determine the charter's meaning, we need not consider practice-based arguments.

{¶ 32} For the foregoing reasons, we conclude that the charter requires that a recall petition must include a number of signatures equal to at least 15 percent of electors who voted at the last regular municipal election at which the office of mayor was on the ballot—not simply 15 percent of the electors who cast a vote for the office of mayor. The most recent such election was in 2023, and 3,913 electors voted at that election. Fifteen percent of 3,913 is 587. None of the three recall petitions at issue here contained at least 587 valid signatures. Therefore, Ogg abused her discretion and disregarded clearly applicable law when she certified that the petitions contained a sufficient number of signatures.

### III. CONCLUSION

{¶ 33} Ogg abused her discretion and disregarded clearly applicable law when she certified that the petitions contained a sufficient number of signatures. Therefore, we issue a writ of mandamus ordering Ogg to determine that the recall

petitions do not meet the signature requirements of the Whitehall Charter, and, in accordance with Section 68 of the Whitehall Charter, for each petition, "certify the particulars in which the petition is defective, deliver a copy of the certificate to the person who filed the petition, and make a record of such delivery." Under the charter, the petitioners "shall be allowed a period of ten days after the day on which such delivery was made in which to make the petition[s] sufficient," *id*.

Writ granted.

————————————

**FISCHER, J., joined by KENNEDY, C.J., and SHANAHAN, J., dissenting.**

{¶ 34} In this case, the court must interpret the meaning of Section 68 of the Whitehall Charter to determine the number of electors' signatures needed on a petition to remove an elected city officer by a recall election. The charter provision states that a recall "petition shall be signed by at least that number of electors which equals fifteen percent in number of the electors voting at the last preceding regular municipal election for the office of Mayor." The majority opinion concludes that this provision means that the number of electors' signatures needed is based on the number of voters who participated in the last preceding election *at which* the mayor was on the ballot, not the number of voters who actually voted *for* mayor. But this interpretation is incorrect.

{¶ 35} Contrary to our well-established rule that we will neither delete nor add words to a legislative provision, *see, e.g.*, *State ex rel. Dudley v. Yost*, 2024-Ohio-5166, ¶ 14, the majority does both. The majority's interpretation specifically replaces the word "for" with "at which" and adds additional language to the provision that does not exist. The majority's interpretations would have the provision read: "Such petition shall be signed by at least that number of electors which equals fifteen percent in number of the electors voting at the last preceding regular municipal election ~~for~~ *at which* the office of Mayor *was on the ballot*." (Strikethrough and italics added to indicate changes.) These deletions and additions

13

change the meaning of the provision, as one cannot vote at an election *for* "the office of Mayor" simply by participating in other elections that also happen to be on the ballot at the same time and in the same election *at which* the office of mayor was on the ballot—either a vote is cast *at* an election *for* the office of mayor or it is not.

{¶ 36} To conduct the appropriate analysis, we need to look no further than the plain language of the Whitehall Charter. The defined term "regular municipal election," Whitehall Charter § 69, is modified in Section 68 by two clauses: (1) "last preceding," which establishes a temporal requirement, and (2) "for the office of Mayor," which limits the type of election. The "for the office of Mayor" clause modifies "regular municipal election" to tie the votes cast at that regular municipal election to a particular election—the mayoral election—rather than to one of the other offices in that election or to the election as a whole. *See* Whitehall Charter § 69 (the purpose of a "regular municipal election" is to elect Whitehall officials). Based on that understanding, the provision does require respondent, Julie A. Ogg, Whitehall's clerk of council, to look at the number of electors who voted *for mayor*—i.e., the number of electors who cast a vote in the mayoral election—rather than the total number of electors who voted in the overall election at which the mayor was merely one of the offices on the ballot. And contrary to the majority's assertion, this interpretation does not add words to the statute; it in fact gives meaning to *every* word in the statute.

{¶ 37} The majority also claims that this interpretation is incorrect because it would allow for the possibility that zero signatures would be required if the last preceding regular municipal election did not have the mayor on the ballot. But this misreads the argument. I agree with the majority that the number of signatures is based on the last election that had the mayor on the ballot. We both conclude that if the mayor is not on the ballot for the last preceding regular municipal election,

then that is not the election that is reviewed for purposes of Section 68 of the Whitehall Charter.

{¶ 38} This case is all about which number to use—the number of electors who voted *at* the regular municipal election *at which* the mayor was on the ballot *or* the number of electors who voted *at* the regular municipal election *for* the office of mayor, i.e., voted in the mayoral election. And the plain language supports the latter interpretation, since "for the office of Mayor" modifies "regular municipal election" and thus includes only those who voted "at" the election "for" mayor.

{¶ 39} Because Ogg used the right number to determine whether the petitions contained a sufficient number of signatures, I would deny the writ of mandamus. Because the majority does not do so, I respectfully dissent.

_____

McTigue & Colombo, L.L.C., J. Corey Colombo, Stacey N. Hauff, and Helen G. Lohre, for relator.

Bradley S. Nicodemus, Whitehall City Attorney; and Brunner Quinn, Patrick M. Quinn, and Morgan L. McDermott, for respondent.

_____